EDWARD WILSON
*v.*
WILLIAM D. GENSEAL.

*Filed at Springfield March 30, 1885.*

1. EVIDENCE—*admissibility as part of the res gestæ—want of materiality, in the light of other evidence.*   On the trial of an action for an assault and battery committed at a particular saloon, the proof showed that the difficulty originated at another saloon, in which the son of the defendant was shot in the leg by a brother of the plaintiff, who fled and was pursued.   A number of witnesses testified that the defendant was present at the saloon when the assault was made by him, while several witnesses testified in behalf of the defendant that he was not present at that place, and that the injury was inflicted by others.   The defendant offered to prove that he tried to dissuade his son from pursuing the person who shot him, which the court refused to allow:   *Held*, that while the proffered evidence was properly admissible as part of the *res gestæ*, on the theory of the defence, yet as there was proof that the defendant did inflict the injury, the error in its rejection was not so material as to justify a reversal.

2. SAME—*statement of a party's apprehension of trouble.*   On the trial of an action for an assault and battery of the plaintiff, the court excluded a question to one of defendant's witnesses as to statements previously made by the plaintiff touching his apprehension of trouble at the place where the difficulty afterward happened, and what he expected to occur.   The plaintiff, on cross-examination, had already stated that he thought there would be some trouble that night:   *Held*, that there was no error in excluding the question.

3. SAME—*cross-examination—of the latitude allowed.* Great latitude is allowable on the cross-examination of a witness, and this court will not reverse on account of liberal rulings in that regard unless it can see that the discretion of the trial court has been abused, and injury has resulted to the party complaining.

4. So on the cross-examination of a defendant in an action of trespass for an assault and battery upon the plaintiff, there is no error in showing his affidavit, previously made, for a continuance of an indictment against him for the same transaction, and examining in relation thereto and reading the same, the statements in the affidavit being contradictory of the whole theory of the defence. Such affidavit is admissible on cross-examination, as affecting his credibility as a witness.

5. WITNESS — *impeachment—recalling witness therefor—violating an order for separation of witnesses.* Although an order has been made for the separation of witnesses pending the taking of testimony in a cause, the trial court may properly allow the recalling of a witness to impeach another witness on the part of the plaintiff, where the witness so recalled has remained present in court a part of the time the plaintiff's witnesses were being examined; but unless there is an abuse of such discretion, the refusal to allow him to testify will be no error.

6. While the court may properly allow a witness to be recalled, and cross-examined as to declarations made by him to others, and thus lay the foundation for impeaching him by such other witnesses, yet a refusal to allow the same is not such a material error as to justify a reversal, it appearing the same facts were shown by six or seven other eye-witnesses of the same transaction.

7. PRACTICE—*mode of saving an objection and exception.* As a jury were about to retire to consider of their verdict, counsel for the plaintiff handed to the jury an affidavit of the defendant which had been admitted in evidence to impeach the testimony of the defendant, whereupon defendant's counsel remarked to the court, "The court understands we are not consenting," and the affidavit was taken by the jury: *Held,* that this was not equivalent to a ruling of the court that the affidavit might be taken by the jury, and to an exception taken to such ruling, so the objection did not avail.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Tazewell county; the Hon. N. M. LAWS, Judge, presiding.

Mr. WILLIAM DON MAUS, and Mr. N. W. GREEN, for the appellant.

Mr. N. E. WORTHINGTON, Mr. S. S. PAGE, and Mr. GEORGE T. PAGE, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This is an appeal from a judgment of the Appellate Court for the Third District, in affirmance of a judgment of the circuit court of Tazewell county, against the defendant, in an action for an assault and battery.

It is insisted the circuit court refused to admit proper evidence for the defendant. The assault and injury were undisputed, and the controversy was as to who committed the same. The theory of the defence was, that at Brandt's saloon, Benjamin Wilson, a son of the defendant, Edward Wilson, had been shot in the leg with a pistol, by one James Genseal; that the latter ran, and was pursued by Benjamin and Jesse Wilson, and others; that after going around a block, or half block, they approached a saloon which was kept by James Genseal, and Jesse Wilson threw a stone, which hit William Genseal, the plaintiff, who was standing in the door of the saloon, on the head, knocking him down, and Benjamin Wilson entered the saloon and inflicted further injury on the plaintiff,—Edward Wilson, the defendant, not being present. It appeared by defendant's testimony, that Edward Wilson was present at Brandt's saloon. Two of defendant's witnesses were asked the question, (for the purpose of showing that defendant endeavored to prevent his son, Benjamin Wilson, from pursuing the person who shot him, or from going to Genseal's saloon,) what they saw or heard defendant, at Brandt's saloon, do or say to Benjamin Wilson before he ran from the saloon, relative to his leaving or going from Brandt's saloon. It is the exclusion, by the court, of this question, which is complained of. The evidence on the part of the plaintiff was strictly confined to the occurrence of the actual commission of the trespass, without any reference to preceding events, or to anything that happened at Brandt's saloon. Still, under the theory of the defence, we think the offered testimony was properly admissible as a part of the *res gestæ,*

and as tending to show defendant did not advise and encourage the commission of the trespass. And if the case had been one resting upon such advice or encouragement, we can well see the evidence would have been material. But the testimony on the part of the plaintiff was direct and positive, of several witnesses who saw the transaction, of the actual commission of the trespass by defendant and Alexander Herndon, no one else being present. On the part of the defendant the testimony was equally positive and direct that the injury was done by Jesse and Benjamin Wilson, neither defendant nor Alexander Herndon being present. The testimony of the two sets of witnesses was flatly contradictory. The verdict shows the jury must have given credence to the witnesses on the part of the plaintiff. This being so, it is not to be supposed that evidence of what defendant said, at Brandt's saloon, to his wounded son, relative to his leaving or going from there, could have had any appreciable weight with the jury. Dissuading another from committing a trespass, would be a light circumstance against proof of the actual commission of the trespass by one's self. Under the case made by the testimony, we can not think that the exclusion of this evidence was of material prejudice to the defendant, and so cause for reversal.

A question to a witness was excluded, whether statements were made by plaintiff touching his apprehension of a trouble at the saloon that night, and what he expected to occur, and this is complained of. We do not perceive the materiality of the question. Besides, plaintiff, himself, had stated, on cross-examination as a witness, that he thought there would be some trouble that night.

Defendant, at the trial, recalled the witness Watson, and asked him the question whether the witness Lewis Green, who had testified on the part of the plaintiff, had said to him (Watson) that they must tell the same story in the case; that they must stand together; that if they did not, they

would not beat defendant, and would not get any pay. The court excluded the question, as would seem, on the ground that the witness had been present at the examination of the plaintiff's witnesses, part of the time, in violation of an order made for the exclusion of witnesses. This is complained of, but we can not see that there was any abuse of the court's discretion in the ruling.

Further complaint is made that the court erred in refusing to permit defendant to recall this same plaintiff's witness, Lewis Green, for the purpose of cross-examining him as to a conversation had by him with one Reveal, to the purport that he (Green) would make his testimony favorable for defendant if the latter would do something for him. This was for the purpose of calling Reveal to contradict the witness, if he should deny the conversation, and thereby impeach the credibility of said witness. The court might properly have permitted this recall and further cross-examination of the witness Green, (*Angus* v. *Smith*, 1 Moody & Malk. 473, and *Queen's case*, 2 Brod. & Bing. 310,) yet we are not prepared to say that the refusal was of such probable prejudice to the defendant that it should cause a reversal of the judgment. Leaving out entirely the testimony of this witness Green, there would then remain six or seven other eye-witnesses who testified to the actual participation by defendant in the commission of the trespass and injury sued for.

The further point is made that the circuit court erred in permitting the introduction of an affidavit of defendant, and his cross-examination on portions of it. This affidavit was one which had been made at the November term, 1883, by the defendant, in a criminal case of an indictment against him for this same assault and battery, for the purpose of procuring a continuance of the cause. Among other things, the affidavit stated that defendant expected to prove by Alexander Herndon that at the time of the commission of the assault the plaintiff had with him, at the saloon of James Genseal,

certain persons, friends of the plaintiff, who were, with the plaintiff, lying in wait for the purpose of assaulting and attacking the friends of Benjamin Wilson, if they should come to the saloon looking for James Genseal, and that while they were so in waiting, the plaintiff suddenly started up and went towards the door of the saloon, with a pistol in his hand; that thereupon some of said friends of plaintiff threw stones or other missiles towards said open door from the rear of the room, or from the yard in the rear, and that by some of the stones or missiles so thrown, and not otherwise, plaintiff was struck and injured, which was the same assault alleged, and that defendant knew of no other witness by whom he could so fully prove the foregoing facts as he could by said Herndon. The plaintiff's testimony makes the stone which struck plaintiff and knocked him down, to have been thrown by Alexander Herndon himself, defendant being together with him. The defendant's testimony makes the stone to have been thrown by Benjamin Wilson, Herndon not being present on the occasion. It was on defendant's cross-examination as a witness in his own behalf, that the affidavit was introduced by plaintiff, and defendant cross-examined upon it. It is contended that the affidavit was admissible to impeach the credit of defendant as a witness, only, as it showed that he had made statements out of court contrary to what he had testified at the trial, and that this affidavit does not show any such contrary statement. The affidavit does not seem to contain any statement which is exactly contrary to anything testified to by defendant, except as there may be contradiction in respect of this particular of defendant's testimony: "I found out, in August, 1883, who it was that struck and injured William Genseal at the saloon that night. I have just heard Jesse Wilson testify that he did it, and I never learned any different." The statements in the affidavit were contradictory to the whole theory of the defence made on the trial, and they relating to the same subject matter, we

think they were properly admissible, on cross-examination, as affecting the credibility of defendant as a witness. As was said in *Cooper* v. *Randall,* 59 Ill. 317, relative to the refusal of permission to witnesses to answer questions on cross-examination: "Such an examination is largely discretionary, and this court will not, usually, reverse, unless we can see that the discretion has been so exercised as to have produced injury. * * * It is only when we can see that it is probable that wrong has been done to the party complaining, that we will reverse for such rulings of the court." And the same observation may be made with respect to the other rulings which we have been considering. There is nothing in the objection taken that defendant was entitled to have the whole affidavit read, and to be reëxamined upon the same, for the purpose of explanation, as there was no denial thereof by the court, and the whole affidavit did go to the jury.

A point is made that the court permitted the jury to take with them to the jury room the affidavit, though only portions thereof had been given in evidence to the jury. It is sufficient to say of this, that there was no exception taken to the permission. All that the bill of exceptions shows in this respect is, that as the jury were about to retire, plaintiff's counsel handed the affidavit to the jury to be taken by them to their jury room, whereupon defendant's counsel remarked to the court, "The court understands we are not consenting," and the affidavit was taken by the jury with them to the jury room. This was not equivalent to a ruling of the court that the affidavit might be so taken by the jury, and to an exception taken to such a ruling.

We perceive no error in the instructions. The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*