360 So.2d 296 (1978)
Myra BEVIS and Danny Bevis and St. Paul Fire and Marine Insurance Company
v.
L & L SERVICES and W. B. W. Pharmacy.
SC 2466.
Supreme Court of Alabama.
June 30, 1978.
Robert L. Gonce, of O'Bannon & Gonce, Florence, for appellants.
*297 Robert E. Jones, III, of Poellnitz, Cox, Robison, McBurney & Jones, Florence, for appellees.
ALMON, Justice.
Myra Bevis brought suit for injuries she received from a defect in the back door steps of a building leased by her employer from the defendant-landlord, L & L Services, Inc. The trial court granted summary judgment for the defendant. The issue is whether the defendant-landlord had knowledge of the latent defect. We answer in the negative and affirm the judgment of the trial court.
The plaintiff, Myra Bevis, was an employee of W. B. W. Pharmacy. While entering the back door of the building, the steps partially gave way resulting in injury. The steps were constructed with concrete blocks with the holes in the blocks turned upward. These holes were covered with concrete. When Mrs. Bevis placed her foot on the steps, the concrete over a hole collapsed causing her to fall.
The prefabricated building was constructed by the defendant-landlord immediately prior to leasing to the Pharmacy. There are no other tenants in the building, and the steps in question were not a common entrance for anyone other than the Pharmacy.
By the terms of the lease, the landlord was to maintain and keep in good repair the plate glass, the outside walls, the roof, the air conditioner, the heating system, the hot water heater, and the parking area. The lease provided that the tenant was to maintain and keep in repair the remainder of the building.
The general rule is, absent a covenant to repair, a landlord is not liable to the tenant or the tenant's servants or guests except for injuries resulting from latent defects known to the landlord at the time of the leasing, and which were concealed from the tenant. Chambers v. Buettner, 295 Ala. 8, 321 So.2d 650 (1975); Southern Apartments, Inc. v. Emmett, 269 Ala. 584, 114 So.2d 453 (1959); Uhlig v. Moore, 265 Ala. 646, 93 So.2d 490 (1957).
". . . In other words, it seems settled by the weight of authority that the landlord is not liable in tort for injuries to said class [the tenants, his servants, guests, or others entering under his title], whether there be a covenant to repair or not, unless the defects existed at the time of the letting, were known to him, and which he concealed from the tenant. . . ." Anderson v. Robinson, 182 Ala. 615, 620, 62 So. 512 (1913).
The issue therefore narrows to whether the defendant had knowledge of the defect.
This case is unlike other cases wherein the landlord is held to a reasonable standard of care to keep in good repair and safe condition those areas used in common by different tenants of the same premises. Mudd v. Gray, 200 Ala. 92, 75 So. 468 (1917); Allen v. Genry, 39 Ala.App. 281, 97 So.2d 828 (1957).
For purposes of summary judgment the defendant stipulated that the steps contained a latent defect.
Bevis seeks to impute knowledge of the defect to defendant through W. H. Johnson, the person who constructed the steps. The issue is whether W. H. Johnson is an agent of defendant or an independent contractor.
"It is the reserved right of control rather than its actual exercise that furnishes the true test of whether the relation between the parties is that of an independent contractor or of employer and employeemaster and servant. Moore-Hanley Hardware Co. v. Williams, 238 Ala. 189, 189 So. 757.
"For one to be an employee, the other party must retain the right to direct the *298 manner in which the business shall be done, as well as the results to be accomplished, or, in other words, not only what shall be done, but how it shall be done. Weeks v. C. L. Dickert Lumber Co., 270 Ala. 713, 121 So.2d 894 and cases there cited." Solmica of Gulf Coast, Inc. v. Braggs, 285 Ala. 396, 232 So.2d 638 (1970).
W. H. Johnson constructed the foundation on which the pharmacy building rests and the outside steps in question. By affidavit, he states that he owns and operates a small contracting business principally engaged in roofing work, laying of concrete foundations, building sea-walls, and carpentry work. He has never been on the payroll of the defendant, although he has performed many jobs for it. He states that he works for many individuals and many different businesses.
Mr. Johnson was paid on a time-expended basis. Under such an arrangement, he gives an estimate of the time required and his corresponding cost estimate. Mr. Johnson secures his own help and pays and supervises them.
Mr. Bob Love, President of the defendant corporation, by affidavit stated that W. H. Johnson had done various kinds of work for the defendant. However, Mr. Johnson has never been on Mr. Love's personal payroll or the defendant's payroll. Mr. Johnson is hired to do jobs on a contractual basis; i. e., he is contacted about a specific job and he is paid according to the bill he submits. Mr. Johnson was to lay the foundation of the pharmacy building and to build steps on a time-expended basis. Mr. Love states that Mr. Johnson normally would be paid based on the number of concrete blocks laid. However, in this situation, the number of blocks was disproportionate to the time necessary to complete the job. Thus, Mr. Johnson was paid based on his estimate of time required for the job.
Mr. Love also states that no one from defendant corporation supervised Mr. Johnson and no one instructed him as to how the work was to be done. If Mr. Johnson employed additional help, it would not affect the cost to defendant.
Bevis maintains that the issue of Johnson's relation with defendant is a factual matter for the jury. Bevis relies heavily on Solmica of Gulf Coast, Inc. v. Braggs, supra. In Solmica, the court held that there was a scintilla of evidence requiring submission to the jury of the issue of whether the parties' relationship was that of independent contractor or of employee and employer.
However, this case is clearly distinguishable from Solmica. There, the court noted that some of the tendencies of the evidence showed the alleged employer instructed the alleged employee as to the manner and method of performing the work; checked on work progress and instructed changes or corrections to be made; and dismissed or fired an employee for unsatisfactory work. There are no such tendencies of the evidence in this case.
Thus, the evidence before the trial court shows conclusively that Mr. Johnson was an independent contractor. There being no genuine issue as to any material fact, summary judgment was appropriate.
The judgment is therefore affirmed.
AFFIRMED.
TORBERT, C. J., and BLOODWORTH, SHORES and EMBRY, JJ., concur.
FAULKNER, J., dissents with whom MADDOX and BEATTY, JJ., concur dissenting.
FAULKNER, Justice (dissenting).
I respectfully dissent.

I.
The majority opinion correctly states the rule of law absolving a landlord from liability unless the injury results from a latent defect known to him and concealed from the tenant. While this rule of law is of *299 long standing in this State, it appears to me that the time has come to take a new look at it. The rule is arbitrary, and unreasonably shields a landlord from tort liability. If a court can adopt a rule of implied warranty of habitability as applied to a seller of a dwelling house, why can't the same rule be applied to a landlord who leases a building to a tenant. The distinction is illogical and unrealistic.
Having spoken of my philosophical views on the rule regarding latent defects, I now come to the reason for this dissent.
Here, the landlord admitted the defect in the steps causing the injury, and repaired them at his expense. Moreover, the landlord by its president, Bob R. Love, testified. . .
"Q. Had you or anyone, to you [sic] knowledge, with L. & L. Services either examined these steps in the back before Myra Bevis says that she fell on August 24, 1974?
"A. I can't say we inspected per se the steps. I noticed the steps when they were done and there was nothing wrong with them at that time.
"Q. Did you look at them at that time?
"A. I can't say that I specifically looked at them. They were just nice steps.
"Q. You were out there though and don't recall seeing anything wrong with them at that time?
"A. Not at the time, no."
By this testimony an issue of fact was raised as to whether the landlord had knowledge of the defect in the steps.

II.
The manner in which the builder was to be paid did not ipso facto determine the issue of agent or independent contractor. Rather, the factual question continued to be whether the owner possessed any reserved power of control. If the plaintiff could prove any fact inferring such a power in the owner, then this would tend to prove agency rather than an independent contractor relationship between the builder and the owner, and then the knowledge of the agent-builder could be imputed to the owner. Because the summary judgment movant has not eliminated this possibility, it was error to grant summary judgment. Folmar v. Montgomery Fair Company, Inc., 293 Ala. 686, 309 So.2d 818 (1975).
MADDOX and BEATTY, JJ., concur.